UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**RONALD SLADE, individually
and as Special Administrator of the
ESTATE OF KAMONIE M. SLADE and
CHARAMA SLADE,**

          Plaintiffs,

    -vs-                                     Case No. 11-C-222

**BOARD OF SCHOOL DIRECTORS
OF THE CITY OF MILWAUKEE,
LINDA ROUNDTREE, MARIBETH GOSZ,
KEITH P. POSLEY, JOHN PITTA,**

          Defendants.

---

## DECISION AND ORDER

---

At the age of 12, Kamonie Slade tragically drowned during a school field trip to the Mauthe Lake Recreation Area. Slade's parents, on behalf of themselves and the estate of their son, brought claims under 42 U.S.C. § 1983 and a supplemental claim under state law. After a series of claims and defendants were dismissed by stipulation, the only remaining federal claim is that Linda Roundtree (n/k/a Linda Estes), the principal at Roosevelt Middle School, and Maribeth Gosz, one of the assistant principals, violated Slade's substantive due process rights under the "state created danger" theory by planning and facilitating the field trip to Mauthe Lake. The defendants move for summary judgment on this claim. For the reasons that follow, the defendants' motion is granted.

## Background

At the time of his death, Kamonie Slade was a 7th grade student at Roosevelt Middle School. During the 2009-2010 school year, Maribeth Gosz was in her second year as an assistant principal at Roosevelt. Ms. Gosz was in charge of the seventh grade students. Her immediate supervisor was Principal Roundtree (n/k/a Principal Estes). Principal Estes was in her ninth year as a principal in the Milwaukee Public School system, and her second year at Roosevelt.

The field trip to Mauthe Lake, involving 92 students, was an incentive-based trip, and only those students who did not receive any suspensions during a certain timeframe and who were moving up to 8th grade were allowed on the trip. Ms. Gosz was actively involved in planning the field trip. As principal, Ms. Estes is not involved in planning the details of field trips and she relied upon staff members and assistant principals to provide the necessary information for a decision to approve a field trip.

In the planning process for the trip, Ms. Gosz discussed with the staff that children would be allowed to play in the lake during the field trip and permission was sought from the parents to allow children to play in the lake in the field trip permission slip. The permission slip read:

> Please have your student bring the following: sunscreen, water bottles, swimsuits, towel.
>
> I give my son/daughter _____ permission to attend the end of the year field trip to Mauthe Lake Recreation Area on Monday, June 14th. **My child also has permission to play in the water at Mauthe Lake**.

MPS Policy 7.30 provides, in relevant part: "No recreational swimming (including, but not limited to, pools at motels, hotels, or water parks; lakes; parks; etc) is allowed as part of a field trip experience unless appropriate certified lifesaving-trained staff is on duty and the activity is supervised by MPS staff." Prior to the 2009-2010 school year, there was a companion memo that read: "It is extremely important that before a student is allowed to participate in a field trip swimming activity, the parent or guardian be contacted to confirm if the child has any previous swimming experience. There should be a statement to that effect on the parent/guardian permission slip before the child attends the field trip. No recreational swimming is allowed as part of a field trip experience unless appropriate lifesaving trained staff are on duty and the activity is supervised by MPS staff."

Ms. Estes understood the Board policy to require a lifeguard present where there were swimming activities in a field trip. According to Principal Estes, when Ms. Gosz presented the field trip application and permission slip to her for approval, she advised Ms. Gosz to strike from the permission slip any reference to water activities and directed that the "students shouldn't be near the water" because allowing children in the water without someone who is licensed and certified could "put kids in harm's way." Contrary to the testimony of Principal Estes, Ms. Gosz claims that there was never any discussion regarding swimming activities with Principal Estes before the field trip. Principal Estes approved the field trip to Mauthe Lake, but the reference to water activities was not removed from the permission slip.

The field trip group arrived at Mauthe Lake around 11 a.m. Ms. Gosz planned that all the chaperones would be responsible for monitoring the children and their interaction with the water with the exception of one teacher who was responsible for preparing the meal. During the field trip, children were allowed in the water and at no time did Ms. Gosz give any instruction to the children regarding playing in the water nor did she ever tell any of the children to stay out of the water. The students playing in the water was a planned activity for the day and the main activity going on during the morning of the field trip, with half of the students on the trip allowed to enter the lake. Before allowing children into the water the day of the field trip, Ms. Gosz did not know the swimming abilities of any of the students or the staff.

At one point, Ms. Gosz asked John Pitta,[1] a seventh grade math teacher, to watch Kamonie Slade and five other students who were standing near the water. Mr. Pitta was a chaperone for the trip, following the directions of what he was told to do that day. Pitta told the children "not to go in the water past their chest." Pitta had never previously been to Mauthe Lake. Up to the time of the drowning, Pitta had not received any information about the topography of the lake. Pitta "had really no knowledge of any of the kids' ability to swim," which is why he "gave them the instruction not to go past their chest" because Pitta "wanted them to be able to walk in the water." Approximately five minutes went by between the time Ms. Gosz interacted with Mr. Pitta at the beach and the time when Mr. Pitta heard a call for help. During that time, "[t]he kids were just playing in the water, jumping around,

---

[1] The federal claims against Mr. Pitta were dismissed by stipulation. ECF No. 30, 31.

splashing, playing and just, you know, what kids do in the water . . ." Pitta first became aware that Kamonie Slade was in distress when Pitta heard some of the children yelling for help. Pitta cannot say for certain when Kamonie Slade began to experience distress.

Sometime after leaving the beach, a student approached Ms. Gosz and told her that someone was drowning. After initially being skeptical, Gosz ran down to the lake. Gosz yelled for someone to call 911, handed the child her glasses, and dove into the water. Mr. Pitta was already in the water. Kamonie Slade was not visible to Ms. Gosz as she approached the lake. Ms. Gosz began to dive underneath the water where Mr. Pitta told her the general location of the drowning student was. Their efforts were in vain. Kamonie Slade drowned approximately 100 feet from the shoreline.

**Analysis**

Substantive due process generally confers "no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). The "state-created" danger theory is an exception to the general rule. In *DeShaney*, a boy who was beaten and permanently injured by his father sued the social workers who received complaints that he was being abused yet did not remove the boy from his father's custody. The Court observed that while the State "may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him more vulnerable to them." *Id.* at 201. Thus liability may exist when the state "affirmatively places a particular individual in a position

of danger the individual would not otherwise have faced." *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir. 1993). The state, "by its affirmative acts, must create or increase a danger faced by an individual." *King v. East St. Louis Sch. Dist. 189*, 496 F.3d 812, 818 (7th Cir. 2007).

The Seventh Circuit has found in favor of a "state-created danger" cause of action on a handful of occasions. In *White v. Rochford*, 592 F.2d 381 (7th Cir. 1979), police officers left children alone in a car on a cold night after arresting their uncle, who was driving the car. In *Reed*, *supra*, police arrested a sober driver but left obviously drunk drivers to drive, who were later involved in an accident. In *Monfils v. Taylor*, 165 F.3d 511 (7th Cir. 1998), an informant was murdered after police officers gave the suspect a recording of the victim's voice, even though the informant recognized the danger and begged the police not to release the tape. Most recently, in *Paine v. Cason*, — F.3d —, 2012 WL 1434961 (7th Cir. Apr. 26, 2012), a scantily-clad, bipolar woman from California was arrested at Midway Airport in Chicago, taken to a police precinct, then released and pointed in the direction of a dangerous neighborhood, where she later fell or jumped from the seventh story of a building where she was raped. The police "did not warn Eilman about the neighborhood's dangers. They did not walk her to the nearest CTA station . . ., from which she could have reached a safer neighborhood in minutes. They did not put Eilman in contact with her mother, who had called the stationhouse repeatedly. Her mother could have called a car service to pick Eilman up and drive her to a hotel (or the airport), and told her to remain at the stationhouse until the car arrived. They did not even return Eilman's cell phone, which she could have used to

-6-

summon aid. They might as well have released her into the lions' den at the Brookfield Zoo. See *Bowers v. DeVito*, 68 F.2d 616, 618 (7th Cir. 1982), which anticipated *DeShaney* but added that throwing someone into a snake pit would violate the due process clause." *Paine* at *6.

On the other side of the ledger, when the government "does not monopolize the avenues of relief . . . it has no further obligation to give aid." *Archie v. City of Racine*, 847 F.2d 1211, 1222 (7th Cir. 1988) (en banc). Thus, in *Sandage v. Bd. of Comm'rs of Vanderburgh Cnty.*, 548 F.3d 595 (7th Cir. 2008), the court rejected a due process claim where the police failed to act on a murder victim's harassment claim against the eventual murderer. "Our plaintiffs' decedents were not safe before the defendants failed to revoke Moore's work release. They were in danger – from Moore – and the defendants had done nothing to restrict the victims' 'avenues of self-help.'" *Id.* at 598. Similarly, in *Archie*, the court rejected a due process claim where the fire department refused to provide rescue services for a woman who eventually died. The state "did not cause DeLacy's diseases or otherwise propel her into danger. . . . It did not take DeLacy into custody. It did not hinder her from seeking other sources of aid; she could have called a private ambulance or asked Hiles or one of her relatives (who lived nearby) to take her to the local hospital." 847 F.2d at 1223. And in *Estate of Stevens v. City of Green Bay*, 105 F.3d 1169 (7th Cir. 1997), the court rejected a claim by the estate of a drunk bar patron who was killed after the police refused to allow his friends to drive him home. "Assuming the estate is correct that Officers Laux and Buckley prevented Stevens' friends from driving him home, the question is

-7-

whether having precluded one reasonable alternative, the officers gave Stevens another. . . . Officers Laux and Buckley listed for Stevens his choices for leaving, each reasonable, and allowed him to choose. He voluntarily accepted one alternative." 105 F.3d at 1177-78 (internal citations omitted).

The plaintiffs argue that the "affirmative act" that placed Kamonie Slade in danger was planning and facilitating a trip that allowed swimming in Mauthe Lake. Yet swimming was not a required activity on the field trip. Thus, the defendants did not "monopolize" Kamonie Slade's "avenues for relief." Slade could have stayed out of the water without any adverse consequences. Accordingly, this case suffers by comparison to Judge Posner's "snake pit" hypothetical, *Bowers* at 618, and the cases where the Seventh Circuit has found in favor of a "state-created danger" cause of action are all distinguishable. No one forced Slade into the water. He was not "propelled into danger" like the unfortunate plaintiff in *Paine*. 2012 WL 1434961, at *7 (discussing *White* and *Reed, supra*). Slade was still safe once the logistics of the field trip brought him to Mauthe Lake. *Sandage* at 598 (plaintiff must show that he was "safe before the state intervenes and unsafe afterward"). It wasn't until Slade voluntarily entered the water that he was in danger.[2]

In a similar case, Judge Crabb dismissed a claim by the lone female member of a high school football team who was injured during practice after being denied access to her protective equipment. The plaintiff sued the football coach because he "offered the option"

---

[2] The Court also notes that the field trip appears to have been entirely optional. The school year was over and the trip was reserved for students who were assured of moving on to the next grade level. Therefore, Slade had another avenue of relief to avoid the danger of Mauthe Lake: don't go on the field trip.

-8-

to participate in drills with players who were wearing gear. "The key phrase in that sentence is 'offered . . . the option.' Plaintiff does not suggest that defendant Grovesteen forced her to participate, only that he allowed her to do so. That is fatal to plaintiff's due process claim." *Elborough v. Evansville Cmty. Sch. Dist.*, 636 F. Supp. 2d 812, 822 (W.D. Wis. 2009). Using the same rationale, Judge Crabb dismissed a claim by a student with brittle bone disease who slipped and fell on the ice during recess. "Plaintiff says that the affirmative act was defendant Conley's decision to force plaintiff to go outside, but the facts do not show that Conley forced plaintiff to do anything. Her alleged error was that she failed to *stop* plaintiff from going outside. Were plaintiff an adult, there could be no serious argument that simply allowing her to leave the building could give rise to liability under the Constitution. Because the court of appeals has declined to distinguish between adults and children in the context of the government's constitutional duty to protect, any theory of liability that relies on plaintiff's status as a child fails." *Edwards v. Sch. Dist. of Baraboo*, 570 F. Supp. 2d 1077, 1084 (W.D. Wis. 2008) (emphasis in original). Judge Crabb's denial of these claims under the "state-created danger" theory is a persuasive application of Seventh Circuit precedent. The plaintiffs' claims must be dismissed using the same rationale.

This is a tragic case, but for the foregoing reasons, the Court must conclude that it is not a federal case. The state-created danger theory is not so broad that it mandates a "federal displacement of state authority over state activities;" otherwise, it would "potentially set up a federal question whenever an accident happens during activities sponsored by the state." *Waybright v. Frederick Cnty., Maryland*, 528 F.3d 199, 208 (4th Cir. 2008). "To transform

ordinary mishaps into constitutional questions would not only bring them into federal court more frequently. Because Congress and the federal judiciary often set the ground rules for those claims in terms of scope of immunity, availability of punitive damages, award of attorneys' fees, and the like, the displacement of state law with federal policies would be difficult to overstate." *Id.*; *see also DeShaney* at 203 (states should not have a system of liability "thrust upon them by this Court's expansion of the Due Process Clause of the Fourteenth Amendment").

Now that the federal claims have dropped out, the Court will follow the general rule by relinquishing jurisdiction over the supplemental state law claims. *Van Harken v. City of Chi.*, 103 F.3d 1346, 1354 (7th Cir. 1997); 28 U.S.C. § 1367(c)(3). The one exception is the plaintiffs' state law claim against Keith Posley, which the Court will dismiss with prejudice pursuant to the stipulation of the parties. ECF No. 30. The federal claims against the School Board will also be dismissed. *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000) (municipality's liability for a constitutional injury requires a finding that the individual officer is liable on the underlying substantive claim).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. The defendants' motion for summary judgment [ECF No. 22] is **GRANTED**;

2. Counts I and II (the federal claims) are **DISMISSED** with prejudice;

3. Count III (the state law claim) is **DISMISSED** with prejudice as it applies to Keith Posley;

4. Count III is **DISMISSED** without prejudice as it applies to Linda Roundtree, Maribeth Gosz, John Pitta, and the Board of School Directors of the City of Milwaukee; and

5. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 21st day of May, 2012.

**BY THE COURT:**

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**